NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Board of Tax and Land Appeals
No. 2020-0475


APPEAL OF TOWN OF CHESTER & a.
(New Hampshire Board of Tax and Land Appeals)

Argued: June 22, 2021
Opinion Issued: September 16, 2021


Donahue, Tucker & Ciandella, PLLC, of Exeter (Christopher L. Boldt, Eric A. Maher, and William K. Warren on the brief, and Eric A. Maher orally), for the petitioners.


Sulloway & Hollis, P.L.L.C., of Concord (Margaret H. Nelson, Derek D. Lick, and Trevor J. Brown on the brief, and Derek D. Lick orally), for the respondent.


DONOVAN, J.  The petitioners, the Towns of Chester and Hudson (collectively, Towns), appeal an order of the Board of Tax and Land Appeals (BTLA) granting the respondent, Public Service Company of New Hampshire d/b/a Eversource Energy (PSNH), abatements of taxes assessed against its property located in Chester for tax years 2014 and 2016 and in Hudson for tax years 2014, 2015, and 2016.  We affirm.

The following facts are supported by the record or are otherwise undisputed.  PSNH, an electric utility company, sought abatements of taxes assessed against its property located in the Towns for the relevant tax years.

See RSA 76:16 (Supp. 2020). The Towns' assessors denied the requests, and PSNH appealed to the BTLA. See RSA 76:16-a, I (Supp. 2020). PSNH's appeals focused primarily upon its "electric utility property," which included, among other things, transmission and distribution (T&D) assets as well as transmission easements and the use of public rights-of-way (PROW) associated with the T&D assets.

In support of its appeals, PSNH submitted an appraisal report prepared by its expert, Concentric Energy Advisors, Inc. (Concentric), setting forth the expert's opinion of the aggregate fair market value of PSNH's taxable property located in each municipality for each tax year. In determining the fair market value of PSNH's land interests — specifically, the transmission easements and use of PROW as well as PSNH's fee land and buildings — Concentric relied, at least in part, upon the Towns' assessed value of those interests. With respect to the fee land and buildings, Concentric determined that the assessed value of those assets reasonably reflected their fair market value. With respect to the transmission easements and use of PROW, Concentric relied upon the average assessed value of fee land per acre in each municipality and adjusted the values based upon various factors that, in its opinion, impact the value of regulated utility property. Two appraisers employed by the Towns' expert, George E. Sansoucy, P.E., LLC (GES), used a substantially similar methodology in appraising the fair market value of the land interests.

At the BTLA's request, the parties submitted stipulations regarding PSNH's property interests in each municipality, including, as relevant here: (1) the aggregate assessments for each tax year; (2) the applicable equalization ratios for each tax year; and (3) GES's and Concentric's final determinations of fair market value. After holding a consolidated hearing, the BTLA granted PSNH abatements of taxes assessed by the Towns for each relevant tax year. In reaching its decision, the BTLA applied the parties' stipulated equalization ratios to the aggregate fair market values set forth in GES's report — which the BTLA credited over Concentric's report — to calculate the "Market Value Adjusted by Level of Assessment," or, in other words, "equalized market value," for each municipality for each tax year. (Capitalization and bolding omitted.) The BTLA then compared the equalized market value to the aggregate assessed value for each municipality for each tax year. The BTLA concluded that an assessment was unreasonable and granted an abatement when it determined that the difference between the equalized market value and the aggregate assessed value was greater than five percent.

Following the BTLA's decision, the Towns moved for partial reconsideration. The Towns argued that because both GES and Concentric relied upon the assessed value of PSNH's land interests in reaching their opinions of fair market value, the values that the BTLA incorporated into its analysis "were already proportionate" and "should not have had the equalization ratio[s] applied to them." The Towns asserted that, instead of

2

equalizing the aggregate fair market value of PSNH's property in each municipality, the BTLA should have equalized the fair market value of the T&D assets and added the resulting number to the "already proportionate" land interests when calculating the equalized market value.

PSNH objected, arguing that the Towns were not entitled to reconsideration because: (1) they failed to timely raise their equalization argument at the hearing, as required by New Hampshire Administrative Rule, Tax 201.37(g); (2) they stipulated to the applicable equalization ratios and aggregate fair market values that the BTLA used in its analysis; and (3) even if the BTLA erred, any such error was harmless. The BTLA denied the Towns' motion, noting that it based its calculations upon values that "were supplied by the [Towns] themselves in the stipulations agreed to by them" and adopting the arguments PSNH raised in its objection. This appeal followed.

Our standard for reviewing BTLA decisions is set forth by statute. Appeal of Keith R. Mader 2000 Revocable Trust, 173 N.H. 362, 365 (2020); see RSA 71-B:12 (2012); RSA 541:13 (2021). We will not set aside or vacate a BTLA decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. Mader 2000 Revocable Trust, 173 N.H. at 365; see RSA 541:13. The appealing party has the burden of demonstrating that the BTLA's decision was clearly unreasonable or unlawful. Mader 2000 Revocable Trust, 173 N.H. at 365; see RSA 541:13. The BTLA's findings of fact are deemed prima facie lawful and reasonable. Mader 2000 Revocable Trust, 173 N.H. at 366; see RSA 541:13.

On appeal, the Towns argue that the BTLA erred by equalizing the aggregate fair market value of PSNH's taxable property without first excluding the value of PSNH's land interests. According to the Towns, PSNH failed to challenge the assessments of its land interests, and, therefore, the BTLA "erroneously applied the equalization ratios to already-proportionate property values, creating inaccurate calculations" and "effectively granting abatements to PSNH for unchallenged parcels." The Towns also assert that the BTLA erred by denying their motion for partial reconsideration for the reasons stated in PSNH's objection. PSNH counters that the BTLA made no error in its equalization analysis and that, for the reasons stated in its objection, the BTLA properly denied the Towns' motion for partial reconsideration. PSNH also argues that the Towns failed to preserve their argument that the BTLA improperly equalized the aggregate fair market value of its taxable property.

For the purposes of this appeal, we assume, without deciding, that the Towns adequately preserved their arguments for our review. Nonetheless, we conclude that the BTLA did not err by applying the stipulated equalization ratios to the aggregate fair market values set forth in GES's report to determine whether the Towns' assessments were proportionate.

3

In tax abatement appeals, the taxpayer bears the burden of proving by a preponderance of the evidence that it has paid more than its proportional share of taxes. See Appeal of Pub. Serv. Co. of N.H., 170 N.H. 87, 93-94 (2017). To satisfy this burden, the taxpayer must show that its property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the municipality. See id. at 94; see also Appeal of Andrews, 136 N.H. 61, 64-65 (1992) (explaining that, in order to achieve proportionality, all taxpayers must be assessed at the same percentage of fair market value). Thus, when resolving tax abatement appeals, the BTLA must make specific factual findings regarding the fair market value of the taxpayer's property and the general level of assessment for the municipality. See Appeal of City of Nashua, 138 N.H. 261, 263 (1994). We will uphold the BTLA's factual findings unless the evidence does not support them or they are erroneous as a matter of law. See Appeal of Pub. Serv. Co. of N.H., 170 N.H. at 94.

As an initial matter, the Towns argue that the BTLA lacked subject matter jurisdiction to grant abatements of taxes assessed against PSNH's fee simple land interests. We disagree. The powers of the BTLA and the rights of taxpayers appearing before it are entirely statutory and are limited by the terms of the statute. Appeal of Town of Sunapee, 126 N.H. 214, 216 (1985); see RSA 71-B:5, I (2012) (providing the BTLA with "power and authority . . . [t]o hear and determine all matters involving questions of taxation properly brought before it"). Pursuant to RSA 76:16-a, I, taxpayers may seek relief from the BTLA if the selectmen or assessors "neglect or refuse to . . . abate." As we explained in Appeal of Town of Sunapee, 126 N.H. at 216, the BTLA's subject matter jurisdiction is, therefore, "limited to the subject of the selectmen's refusal or neglect." See RSA 76:16-a, I. Accordingly, because "[s]electmen can be said to neglect or refuse only what a taxpayer has first requested," the BTLA's subject matter jurisdiction "is limited to the subject of a taxpayer's original request to the selectmen." Appeal of Town of Sunapee, 126 N.H. at 216.

Here, consistent with the jurisdictional rule set forth in Appeal of Town of Sunapee, PSNH submitted abatement requests to the Towns' assessors listing all of its property — including its fee simple land interests — in each municipality for each relevant tax year. PSNH submitted the same list of properties as the subject of its appeals to the BTLA and responded "n/a" to the section of each application requesting information about PSNH's "other property(ies) . . . in the municipality that is (are) not being appealed." Thus, the record shows that PSNH did, in fact, challenge the proportionality of the Towns' assessments of all of PSNH's land interests, and, therefore, we conclude that the BTLA did not exceed its jurisdiction by granting abatements as to PSNH's fee simple land interests.

Furthermore, we are unpersuaded by the Towns' argument that "the BTLA adopted values [of PSNH's land interests] that were already

proportionate" and, thus, "should not have attempted to equalize [those] values." The record demonstrates that neither GES nor Concentric reached any conclusion regarding the proportionality of the Towns' assessments of PSNH's land interests. To the contrary, both experts opined that, with respect to these land interests, the final valuations set forth in their reports reflected the fair market value of those interests — not equalized assessed values. For example, Concentric's report states that the purpose of its appraisal was "to express an 'as-is' retrospective opinion of the market value" of PSNH's electric utility property and that, in conducting its appraisal, it relied upon the assessed value of PSNH's fee land and buildings "as reflecting [the] fair market value" of those assets. In addition, an appraiser employed by Concentric explained that, although equalization was not the focus of her analysis, she considered the assessed value of PSNH's fee simple land interests to be a "reasonable" estimate of their fair market value.

Similarly, GES's report explains that, for the purposes of its appraisal, it assumed that the assessed value of PSNH's fee simple land interests "represent[ed] the fair market value" of those interests. However, one of GES's appraisers explained that GES "didn't just assume" that "what was on the tax card" accurately reflected the fair market value of PSNH's fee simple land interests; rather, GES based its assumption upon "intimate knowledge about what was on the tax cards" and "what was embedded in those values." The appraiser also testified that he understood the difference between the assessed value and the fair market value of property, barring any possibility that GES's assumption was based upon a misunderstanding of the values at issue.

Moreover, the fact that both GES and Concentric concluded that the assessed value of PSNH's fee simple land interests represented the fair market value of those interests does not necessarily mean that the Towns assessed those interests proportionately. As explained above, the test in a tax abatement proceeding is whether the municipality assessed the taxpayer's property at a higher percentage of fair market value than the percentage at which property is generally assessed in the municipality. See Appeal of Pub. Serv. Co. of N.H., 170 N.H. at 93-94. If, as both experts concluded here, the assessed value of property reasonably reflects its fair market value, it follows that the municipality assessed the property at approximately 100 percent of its fair market value. If, however, the general level of assessment in the municipality is less than 100 percent, the taxpayer may still demonstrate that the municipality's assessment of that property was disproportionate. See id.; see also Appeal of Andrews, 136 N.H. at 63-65 (holding that taxpayers were entitled to an abatement to sixty-three percent of fair market value — the general level of assessment in the municipality — when the municipality assessed their property at eighty-four percent of fair market value). Accordingly, we find no merit in the Towns' argument that the BTLA "should have concluded" that PSNH's fee simple land interests "had been proportionately assessed."

5

Contrary to the Towns' argument, the BTLA's decision to adopt the values set forth in GES's report as the fair market value of PSNH's land interests — rather than as the "already proportionate" assessed value of those interests — was a factual finding. See Appeal of Pennichuck Water Works, 160 N.H. 18, 37 (2010) ("Determination of fair market value is an issue of fact." (quotation and ellipsis omitted)). Because that finding was both supported by the record and not erroneous as a matter of law, we will not overturn it. See Appeal of Pub. Serv. Co. of N.H., 170 N.H. at 94 (explaining that we will not overturn the BTLA's factual findings "unless the evidence does not support them or they are erroneous as a matter of law"). We therefore hold that the BTLA did not err by equalizing the aggregate fair market value of PSNH's property — including its land interests — when it determined that the Towns' assessments of PSNH's property interests were disproportionate. See Appeal of City of Nashua, 138 N.H. at 263.

Affirmed.


MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.